Anna Davidoff, Transferee v. Commissioner. Earl Davidoff, Transferee v. Commissioner.
Davidoff v. Commissioner
Docket Nos. 30368 and 30369.
United States Tax Court
1951 Tax Ct. Memo LEXIS 40; 10 T.C.M. (CCH) 1110; T.C.M. (RIA) 51348; November 20, 1951
*40 George R. Sherriff, Esq., for the petitioners. John A. Clark, Esq., and Rigmor O. Carlsen, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Petitioners challenge respondent's determination for 1943 of a deficiency of $7,775.20 in income tax and a $3,887.60 fraud penalty against their transferor, Thomas Davidoff, now deceased, and transferee liabilities against them as follows: Deficiency
Penalty
Total
Anna Davidoff
$5,159.00
$2,541.00
$7,700.00
Earl Davidoff
2,012.05
987.95
3,000.00
The deficiency against Thomas Davidoff, deceased, resulted principally from respondent's determination that the deceased realized as sales income proceeds of $13,265.20 received from the sale of dresses belonging to the Joyce Dress Company. Findings of Fact Thomas Davidoff, hereinafter referred to as decedent, died November 10, 1944. Petitioner Anna Davidoff, his widow, was named an executrix of his estate. In accordance with decedent's will and trusts contained therein, a distribution of $7,700 was made to Anna and a distribution of $3,000 was made to petitioner Earl Davidoff, their son. In March 1942 decedent, *41 Harry Richter, and Harry's sister, Helen Richter, organized the Joyce Dress Company for the purpose of manufacturing inexpensive dresses. Each subscribed one-third of the stock. Harry was president; decedent served as production man and Helen made up the styles. Decedent and Harry attended to most of the business activity which was handled in an informal manner. Decedent's duties required him to check the technical fit of the dresses, wait on trade, and call on accounts. He had full authority to make sales for the company. Decedent occasionally collected the sales price of goods sold, but the sales were usually on terms and payment was ordinarily made by check mailed or brought into the office. The company maintained one bookkeeper who was subject to the joint control of the three stockholders. The company sometimes sold about 60,000 dresses a month, ranging in price from about $2.25 to $3.50. Depending on how busy they were, the stockholders would take a physical inventory of piece goods and dresses once a month or every two months. The number of dresses actually kept in the company sales room depended upon the season of the year. In the summer that number totaled between 10,000 *42 and 15,000 dresses. Differences of opinion regarding management and operation of the business developed among the stockholders. It became apparent that they could not cooperate amicably. In October 1943 the company was dissolved. In 1946 during an examination by a revenue agent of the company's 1943 income tax return it was discovered for the first time that during 1943 decedent had made sales of dresses which belonged to the company, totaling $13,265.20, and had retained the proceeds. Upon discovery Harry contacted petitioner Anna Davidoff to ascertain if any recovery could be made. Anna reported that she had no money, which assertion Harry accepted without probing further into either her financial status or that of decedent's estate. By letter dated May 4, 1948, from the internal revenue agent in charge of the Upper New York Division, addressed to decedent in care of Anna, a deficiency of $7,331.20 and penalty of $3,887.60 was proposed to be determined against decedent for 1943. In the accompanying schedule in which the proposed adjustments to net income were set out, there was included with asserted personal and business expenditures disallowed and added to net income, an *43 item of $13,265.20 denominated "sales income." The explanation read: "The taxpayer sold dresses which belonged to the Joyce Dress Company for a total amount of $13,265.20. This amount was received from the Tasty Dress Co. and then K. and N. Dress Co. and was not included as income on the return." The 50 per cent penalty was explained as having been asserted in accordance with the provisions of section 293 (b) of the Internal Revenue Code. By notice from respondent dated June 17, 1948, Anna, as an executrix of decedent's estate, was advised of the determination of the deficiency and penalty as proposed in the May 4, 1948, letter. This total amount plus interest was assessed October 29, 1948, and has not been paid. With this computation as the basis, respondent, by respective notices dated June 15, 1950, determined transferee liabilities, limited to the value of assets received by each, of $3,000 in income taxes and penalty against Earl Davidoff and $7,700 in income taxes and penalty against Anna Davidoff. Opinion In the circumstances and under the facts of the present record we accept respondent's statement of one of the issues to be "whether the distributions *44 made by the estate to the petitioners herein rendered the estate insolvent for the payment of the taxes and penalties assessed." On that conceded issue the burden was upon respondent. Annie Temoyan, et al., Trustees, 16 B.T.A. 923; section 1119, Internal Revenue Code. There is no evidence from which a finding of insolvency at any time, and particularly at the time of the transfers, can be made. All that respondent relies upon is an exhibit showing income and disbursements. Nothing has been submitted as to assets and liabilities. Respondent having failed to sustain his burden on an indispensable phase of the liability of the only petitioners involved in this proceeding, his determination must be disapproved without the necessity of examining other possible grounds for reaching the same result. Decisions will be entered for the petitioners.